IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAY 1 9 2003

Michael N. Milby
Clerk of Court

| | |
|---|---|
| NOE GONZALEZ, | § § |
| *Plaintiff,* | § C. A. NO.B-02-194 § JURY DEMAND |
| vs. | § § |
| ROBERT LIZCANO, MICHAEL WILSON, JOE E. LOPEZ, ALEX. RAMIREZ and J.C. GOMEZ | § § § § |
| *Defendants.* | § § |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

NOW COMES plaintiff, Noe Gonzalez and files his response to defendants' motion for summary judgment, respectfully showing as follows:

### PLAINTIFF'S SUMMARY JUDGMENT PROOF

1.  Plaintiff intends to use plaintiff's affidavit, attached as "Exhibit A," as summary judgment evidence in support of his response to defendants' motion. In addition, plaintiff intends to make reference to portions of defendants' summary judgment evidence, designated as "Exhibit D".

### FACTS OF THE CASE

2.  Plaintiff has no substantial disagreement with defendants' general rendition of the facts, however, plaintiff takes exception to defendants' trivializing the degree of the claimed deprivation by "deconstructing the elements" of plaintiff's experience at the Judge Homer Salinas

Rehabilitation Center ("Boot Camp").[1] Incidents of spider bites necessitating medical care and hospitalization are not inconsequential.

3.  Plaintiff was a resident of the Boot Camp from June 18, 2001 until July 2, 2001. He was housed in Alpha dorm, one of the two dorms at the Boot Camp. (Ex. A). The residents are made up of "youthful" males. (Exhibit D-1).

4.  On or about June 27, 2001, plaintiff reported to sick call because his right knee was extremely swollen, itching and inflamed, and he could hardly bend it. Plaintiff's knee was as big as a football. He told the doctor that he thought he had been bitten by a spider. The doctor at the Boot Camp gave plaintiff a brace and aspirin, and released plaintiff to full duty training without restrictions. (Ex. A).

5.  From June 27, 2001 until July 2, 2001, plaintiff was forced to participate in the regular training of the Boot Camp just like all the other cadets. He had to do strenuous training exercises despite the condition of his knee. Part of the routine of the Boot Camp was that the staff had the cadets scramble in and out of their bunks numerous times in a regimen called "30 in 30 out." The staff would go into the dorms about six times beginning sometime after the residents went to bed at night until morning and make them do exercises for thirty minutes, and sleep with the lights on for 30 minutes. This routine went on every night. Boxer shorts were worn, so it had to be obvious that plaintiff's knee was swollen and that he was in a lot of pain. Plaintiff was having difficulty getting in and out of his bunk and difficulty in doing the exercises. Plaintiff's knee got so swollen that it became the size of a football. It got so bad that he could barely bend his knee.

---

[1] Credit for the quoted phrase must be given to Judge Benavides of the Fifth Circuit. *Palmer v. Johnson* 193 F.3d 346 (5TH Cir. 1999).

He was limping and he complained about the pain in his knee everyday. Plaintiff requested help from the Boot Camp staff but it was to no avail. Plaintiff endured unending pain and suffering and was told by defendants, Ramirez and Wilson to "suck it up" and "quit being a baby." The defendants made the cadets sleep with the lights on. The cadets were told by their sergeant that the lights prevented spiders from coming into the dorms. There was a fluorescent light fixed about four feet above where plaintiff lay in his bunk. Between the pain in his knee, the effects of daily rigorous training, the "30 in 30 out" routine and the lights being on all night, plaintiff was unable to sleep. He lay in his bunk crying. He was sleep deprived, miserable and suffered intense pain and swelling up to the time he was finally treated at the hospital. (Ex. A)(Exhibit D-4; pg. 000023).

6. On July 2, 2001, the Boot Camp doctor finally had plaintiff transported to the hospital. (Ex. A). Plaintiff was hospitalized for approximately nine days. He was discharged with a diagnosis of "toxic affects of venom" and "cellulitis of the right leg." (Exhibit D-4; pg. 000020).

ARGUMENT AND AUTHORITY

7. The Eighth Amendment affords protection against conditions of confinement which constitute health threats but not against those which cause mere discomfort or inconvenience. Wilson v. Lynaugh, 878 F.2d 846, 849 (5th Cir.1989). When he was sent to the Boot Camp, Noe Gonzalez did not expect the amenities, conveniences, and services of a good hotel. The conditions and conduct complained of by plaintiff amount to jail conditions tantamount to a wanton and unnecessary infliction of pain resulting in the unquestioned and serious deprivation of basic human needs. Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). When he

was bitten, the government had an obligation to provide medical care for him because it has such an obligation for those whom it is punishing by incarceration. Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed. 2d 251 (1976). "An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such a failure may actually produce physical 'torture or a lingering death,' . . . the evils of most immediate concern to the drafters of the Amendment. In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose. Cf. Gregg v. Georgia, supra, at 173, 96 S.Ct. at 2924-25 (joint opinion). The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency as manifested in modern legislation codifying the common-law view that '(i)t is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself.' " Id., 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed. 2d 251 (1976).

8.   Defendants Were Deliberately Indifferent:

The conditions plaintiff underwent involved the wanton and unnecessary infliction of pain. Plaintiff's situation was nothing so trivial as merely "enduring irritating insect bites." After seven months and 23 incidents of spider bites with one previous hospitalization to the plaintiff's, the defendants' argument that they did not know of a substantial risk of harm is flimsy. Defendants had the option and the duty to abandon the Boot Camp until the danger was abated. Instead, defendants deliberately chose to expose the cadets to unnecessary risk while defendants experimented with ways to eradicate the serious problem of spider bites and infection.

9.      Plaintiff suffered a debilitating injury for at least one week before he was finally transported to a hospital. He endured pain on a daily basis. He was put through the same routine as the other cadets with no restriction or allowance for his physical condition. He was obviously suffering because he was limping and his knee was the size of a football. He was put through strenuous activities throughout the day and into the middle of the night. He did not get much rest and no respite to the pain he endured. (Ex. A). Plaintiff was allowed to see a doctor once with complaints of an obvious, serious, debilitating injury. The doctor gave him an aspirin and a brace with no restrictions on activities. After a week went by, plaintiff was permitted a second doctor visit and was hospitalized. Plaintiff had surgery in the hospital under general anesthesia. (Exhibit D-4; pg. 000027).

10.     The facts of this case demonstrate the requirements of the cases cited by defendants. The summary judgment evidence proves that plaintiff had to endure the "wanton and unnecessary infliction of pain." The first prong of the Farmer case is met by the showing of a "denial of the minimal civilized measure of life's necessities." At the time of his incarceration, plaintiff was 19 years old. (Exhibit D-4; pg. 000020). The Court has evidence of a known, long term infestation of spiders; evidence of frequent and numerous spider bite incidents, with one previous hospitalization; evidence of the plaintiff's bite and serious, disabling injury; evidence of plaintiff's suffering and defendants' disregard, and; evidence of the rigorous training and sleep deprivation plaintiff went through for at least one week. The evidence is uncontroverted that plaintiff's physical, mental, and emotional health and well-being were threatened. "When 'the cumulative impact of the conditions of incarceration threatens the physical, mental, and emotional health and

well-being of the inmates ...' the court must conclude that the conditions violate the Constitution. Rhodes v. Chapman, 452 U.S. 337, 364, 101 S.Ct. 2392, 2408, 69 L.Ed.2d 59, 80 (1981).

11. Plaintiff also meets the second requirement of the Farmers test. The evidence shows defendants had a "sufficiently culpable state of mind." Defendants admit that they were aware of the spider bite incidents and the health consequences. Defendants were aware of plaintiff's particular situation. The facts not only reasonably inferred, but actually demonstrated an excessive risk to plaintiff's health or safety. Plaintiff's knee was enormously swollen, he suffered extreme pain and was sleep deprived. Nevertheless, defendants compelled him to participate in rigorous training, and risk further serious injury by jumping in and out of a three tiered bunk bed at all hours of the night. It is not by any stretch of the imagination that a reasonable person could anticipate further and/or aggravating injuries to be caused to plaintiff. When the restrictions of confinement rise to a level that results in physical torture, it can result in pain without penological purpose constituting cruel and unusual punishment under the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). It is defendants' wantonness, not inadvertence or error in good faith, which characterizes their conduct which is prohibited by the Cruel and Unusual Punishments Clause. There was no mere inadvertence here.

12. The second prong of the "sufficiently culpable state of mind" requirement is whether an inference was actually drawn that there existed the potential for excessive risk to health or safety. Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of a substantial risk. Farmer, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Again, defendants knew the risks of the infestation to the health of the

cadets, and had experience with the consequences. By their actions they admit they knew of the health risks, but after sundry fumigations and "countermeasures," defendants continued to unnecessarily expose the cadets, including plaintiff. The only reasonable solution was to move out until the problem was resolved.

13. With regards to the plaintiff's particular situation, his bunk bed was 6-8 feet off the ground. He was routinely forced to scramble into and out of the bed at all hours of the night. Plaintiff was required to hold heavy weights in a contorted position and "duck walk" across hot, rugged pavement for ten or sometimes 20 minutes wearing only socks. Plaintiff endured torturous training, and when the defendants didn't outright ignore the plaintiff, they would throw an aspirin at him in response to complaints of pain. (Ex.A).

14. The plaintiff's summary judgment evidence demonstrates callous punishment without a breath of penological purpose. It is punishment for the sake of punishment that borders on uncivilized behavior. It is proof of a reprehensible, culpable state of mind and that the defendants engaged in wanton infliction of pain repugnant to the conscience of mankind.

15. <u>Defendants Are Not Entitled To Qualified Immunity</u>:

Plaintiff adopts and incorporates the previous paragraphs. Plaintiff has met the burden of demonstrating that defendants' wrongful conduct violated clearly established law. Plaintiff was deprived of an actual, clearly established constitutional right; a "denial of the minimal civilized measure of life's necessities," including conditions of confinement without wanton and unnecessary infliction of pain.

16.　Plaintiff has met the burden of showing that defendants' conduct was "objectively unreasonable in light of the then clearly established law." Defendants continued to expose plaintiff to the risk of serious injury by not abandoning, at least temporarily, the infested dorms until the nature of the dangers were understood and resolved. Defendants did not provide timely and adequate medical care. Defendants knew that plaintiff suffered a serious injury and not only disregarded the obviousness of the injury, but ignored pleas for help. Instead of acting civilized, defendants participated in conduct that amounted to torture of the plaintiff. There should be no qualified immunity for these defendants.

17.　<u>Exhaustion Of Administrative Remedies</u>:

Defendants brief is self-defeating for two reasons. The sole remedy sought by plaintiff is money damages. The Prison Litigation Reform Act ("PLRA") advanced by defendants does not apply to suits seeking monetary damages. The quoted paragraph from the PLRA makes specific reference to actions brought "by a prisoner confined . . ." Plaintiff, once he was transferred to the hospital, never returned to the Boot Camp nor to confinement in any "jail, prison, or other correctional facility." (Exhibit D-4: pg. 000005) The PLRA on its face therefore does not apply to the plaintiff's situation. In addition, *Wendell v. Asher*, the case cited by defendants, expressly excuses pursuit of administrative remedies by state prisoners filing suit for monetary damages. For the reasons stated, plaintiff is excused from complying with the PLRA.

CONCLUSION

18.　Defendants have failed in their burden to show that there is no genuine issue for trial. There exists a dispute over facts that might affect the outcome of the lawsuit under governing

law. Plaintiff requests that this Honorable Court deny defendants' motion for summary judgment and grant plaintiff such other and further relief to which plaintiff may show himself justly entitled.

                  Respectfully submitted,

                  MOSS LAW OFFICE
                  5350 S. Staples, Suite 209
                  Corpus Christi, Texas 78411
                  (361) 992-8999 Telephone
                  (361) 992-8373 Telecopier

By: _____
     Abraham Moss
     State Bar No. 14581700
     Fed Bar No. 364

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing was served upon all counsel of record, to wit:

| | |
|---|---|
| Mr. John M. Orton<br>Assistant Attorney General<br>Litigation Services Section<br>P. O. Box 12548<br>Austin, Texas 78711-2548 | **Telecopied**: # 512-495-9139<br>*and* **CMRRR**: # 7002 0510 0004 4299 6595 |

by certified mail, return receipt requested pursuant to Rule 5, Fed. R. Civ. Pro., and as otherwise indicated, on this the 19th day of May, 2003.

_____
Abraham Moss

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| NOE GONZALEZ, | § § | |
| *Plaintiff,* | § § | C. A. NO. B-02-194 |
| | § | JURY DEMAND |
| vs. | § § | |
| ROBERT LIZCANO, MICHAEL WILSON, JOE E. LOPEZ, SGT. RAMIREZ and J.C. GOMEZ | § § § § | |
| *Defendants.* | § | |

### AFFIDAVIT OF NOE GONZALEZ

STATE OF TEXAS      §
                    §
COUNTY OF CAMERON   §

BEFORE ME, the undersigned authority, on this day personally appeared Noe Gonzalez, known to me to be the person whose signature appears below, and after being duly sworn upon oath, deposed and stated as follows:

"My name is Noe Gonzalez. I am over twenty-one years of age, of sound mind, and competent in all other respects to make this affidavit. Everything stated herein is based on upon personal knowledge and is true and correct.

1.    I am the plaintiff bringing this claim in the above captioned cause.

2.    I was a resident cadet of the Judge Homer Salinas Rehabilitation Center ("Boot Camp") from June 18, 2001 until July 2, 2001. I was housed in one of two dorms in the Boot Camp. I was in the Alpha dorm.

3.    On or about June 27, 2001, I reported to sick call because my right knee was extremely swollen, itching and inflamed, and I could hardly bend it. My knee was as big as a football. I told the doctor that I thought I had been bitten by a spider. There had previously been many occurrence of spider bites at the Boot Camp. The doctor at the Boot Camp gave me a brace and a couple of aspirins, told me not to worry about it, and then released me to full duty on June 27, 2001.

4.      From June 27, 2001 until July 2, 2001, I had to go through the regular routine of the Boot Camp just like all the other cadets. I had to do strenuous training involving my swollen knee with no restrictions. My sleeping bunk was a top bunk, about six to eight feet above the ground. Part of the regular routine of the defendants was that they had us scramble in and out of our bunks numerous times in a regimen called "30 in 30 out." Routinely, beginning sometime after we turned in, various defendants would come into the dorms and make us do exercises for thirty minutes and let us sleep with the lights on for 30 minutes. This would happen roughly six times from evening hours into the morning. This routine went on every night I was at the Boot Camp. Our uniforms were boxer shorts and tee shirts. It was real obvious to everyone, including the defendants that I was in pain, that I was having difficulty getting in and out of my bunk, difficulty doing the training, and that my knee was incredibly swollen.

5.      Other parts of the training that I was forced to participate in involved an exercise in which we were forced to stand, leaning back against a wall, holding our footlockers, weighing about 40-50 lbs. for 20-30 minutes. The pain in my knee would become unbearable. To get to the mess hall, we were forced to assume a catcher's position, bending deep at the knees but with our hands behind our heads and "duck walk" in only our socks across hot pavement scattered with pebbles for 10-20 minutes. It got so that I couldn't bend my knee at all. I was limping badly and I complained about the pain in my knee everyday. I requested help from the defendants, but no one cared, and no action was taken to give me any relief from the unending pain and suffering I was going through. The occasional aspirin defendants threw at me was not relieving the pain in my knee. Defendants, Ramirez and Wilson told old me to "suck it up" and "quit being a baby."

6.      The defendants made us sleep with the lights on because, we were told by our sergeant, the lights would prevent the spiders from coming into our dorms. There was a fluorescent light fixed about four feet above where I lay in my bunk. Between the pain in my knee and the lights being on all night, I was unable to sleep. Most nights, I lay in bed with tears in my eyes. I was miserable and suffered a lot of excruciating pain right up to the time I was finally treated at the hospital.

7. I was able to get on sick call again on July 2, 2001. The doctor finally had me transported to the hospital. I was released from the hospital after about nine days of treatment. When I was released, I was not returned to the Boot Camp and I was not placed in a jail, prison, or other correctional facility."

Further affiant sayeth not.

Noe Gonzalez

SUBSCRIBED AND SWORN TO BEFORE ME on the 19th day of May, 2003, to certify which witness my hand and official seal.


GABRIELA A. ALCALDE
MY COMMISSION EXPIRES
June 13, 2005

NOTARY PUBLIC, IN AND FOR THE
STATE OF TEXAS
Printed Name: Gabriela A. Alcalde
My Commission expires: 06-13-2005

3

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| NOE GONZALEZ, | § § | |
| *Plaintiff,* | § § | C. A. NO.B-02-194 |
| | § | JURY DEMAND |
| vs. | § § | |
| ROBERT LIZCANO, MICHAEL WILSON, JOE E. LOPEZ, ALEX. RAMIREZ and J.C. GOMEZ | § § § § | |
| *Defendants.* | § | |

ORDER

Pending before the Court is the defendants' motion for summary judgment and the plaintiff's response to defendants' motion.

The Court orders that defendants' motion for summary judgment be and it is hereby denied.

DONE at Brownsville, Texas on this ___ day of _____, 2003.

_____
HILDA G. TAGLE
UNITES STATES DISTRICT JUDGE