IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

MAR 1 5 2004

Michael N. Milby, Clerk of Court
By Deputy Clerk _____

| | | |
|---|---|---|
| **NOE GONZALEZ** | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION B-02-194 |
| | § § | |
| **HIDALGO COUNTY, TEXAS, ROBERT LIZCANO, MICHAEL WILSON, JOE EL LOPEZ, SGT. RAMIREZ, AND J.C. GOMEZ** | § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

BE IT REMEMBERED, that on March 11, 2004, the Court **GRANTED** Defendants' Motion for Summary Judgment [Dkt. No. 15].

### I. Introduction

Plaintiff, Noe Gonzalez, a former resident of the Judge Homer Salinas Rehabilitation Center ("Boot Camp"), brings this suit pursuant to 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments of the Constitution of the United States against five defendants in their individual and official capacities: Joe E. Lopez, Executive Director of the Hidalgo County Community Supervision and Corrections Department ("HCCSCD"), Robert Lizcano, Program Coordinator of the Boot Camp, Michael Wilson and Sergeant Alex Ramirez, Drill Staff at the Boot Camp, and J.C. Gomez, Director of the Boot Camp. Defendant Hidalgo County, Texas, was previously dismissed by stipulation. HCCSCD operates the Boot Camp and is a governmental unit under Texas state laws. See Tex. Gov't Code Ann. §§ 76.001-.017 (West 1998 & Supp. 2004).

### II. Undisputed Factual Background

The Judge Homer Salinas Rehabilitation Center is a highly structured residential

1

program that houses and supervises young male offenders between the ages of 17 and 26. The program is modeled on a military basic training concept, and it services young offenders who have been convicted of non-violent felonies. The program has four main goals: rehabilitation, incapacitation by housing the offenders in a residency program that protects society from further offenses, deterrence, and retribution by punishing offenders for their harmful behavior. See Defs' Motion, Ex. D-1. Participants in the program must meet several criteria: offenders must be on probation for a felony offense, which includes deferred adjudication; offenders must not have personally and intentionally caused serious bodily injury or death to a victim as a result of the offense; offenders must not have used a deadly weapon during the commission of the offense; and offenders must meet certain physical requirements ensuring they are capable of participating in the program. See id.

Plaintiff, after meeting the requirements of the Boot Camp program, began his residency on June 18, 2001. Plaintiff asserts in his first amended complaint that on or near June 27, 2001, he suffered a Brown Recluse spider bite while he was a resident of the Boot Camp. See Pl's First Amended Cmplt, ¶ 14 [Dkt. No. 19]. He alleges "enforcement, supervisory and medical personnel delayed treatment of [his] injuries, prolonged his suffering, and deliberately exacerbated [his] medical, physical, and emotional condition." Id.

Defendants attach as exhibits Plaintiff's medical records maintained by the Boot Camp. These records show Plaintiff reported to sick call on Wednesday, June 27, 2001, for pain associated with swelling in his right knee. See Defs' Motion, Ex. D-4. The records indicate the knee problem was "exercise related." Plaintiff was released the same day from sick call and was prescribed 100 milligrams of Ibuprofen twice daily and given a knee brace, but was not directed to restrict his physical activity. Five days later, Plaintiff returned to sick call with an infection in his knee. Dr. Omar Garza, the Boot Camp physician, ordered that Plaintiff be sent to the Edinburg Medical Center for further observation and medical care. While at the hospital, Plaintiff was treated for a spider bite, which included an excision, debridement, and irrigation of his knee. He was released from the hospital on July 11, 2001. See Defs' Motion, Ex. D-4, p. 000020.

The medical center's discharge diagnosis states the Plaintiff suffered from the "toxic affects of venom" and a "venomous spider bite." Id.

Plaintiff states in his response motion that he "has no substantial disagreement with defendants' general rendition of the facts, however, [he] takes exception to defendants' trivializing the degree of the claimed deprivation by 'deconstructing the elements' of plaintiff's experience at the Judge Homer Salinas Rehabilitation Center ("Boot Camp")." Pl's Response to Summary Judgment Motion, at p. 1-2 [Dkt. No. 16] (citing Palmer v. Johnson, 193 F.3d 346 (5th Cir. 1999)). Plaintiff attaches an affidavit that catalogues in detail the training he was required to participate in between June 27, 2001, the day he first reported to sick call, and July 2, 2001, the day he returned to sick call. See Pl's Response, at p. 2 & Ex. A.

Plaintiff states he experienced severe pain and had extreme swelling in his knee. Id. at p. 2 & Ex. A. Plaintiff further represents that he complained about the pain to the staff to no avail, he limped and "could barely bend his knee." Id., at pp. 2-3, Ex. A.

Despite Plaintiff's knee injury, he states in his affidavit that he was told by Defendants Ramirez and Wilson to "suck it up" and "quit being a baby." Id. Finally, he states that in addition to the knee pain and the effects of rigorous daily training, Plaintiff was unable to sleep because "cadets were told by their sergeant that the lights prevented spiders from coming into the dorms." Id. Plaintiff asserts he was "sleep deprived, miserable, and suffered intense pain and suffering up to the time he was finally treated at the hospital." Id.

### III. Standard for Summary Judgment

Summary Judgment shall be granted if the record, taken as a whole, "together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Factual controversies, if any exist, are resolved in favor of the nonmoving party. See Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). See also Hunt v. Cromartie, 526 U.S. 541, 552 (1999). The party making a summary judgment motion has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings and discovery documents that demonstrate the absence

of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986) ("the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the non-moving party's case"). See also Colson v. Grohman, 174 F.3d 498, 506 (5th Cir.1999). Although the party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact," Celotex Corp., 477 U.S. at 327, the party "need not negate the elements of the nonmovant's case." Little, 37 F.3d at 1075 (citing Celotex, 477 U.S. at 323).

If the moving party meets this burden, the non-movant then must designate specific facts, beyond the pleadings, showing there is a genuine issue for trial. See Fed. R. Civ. P. 56(e). See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Little, 37 F.3d at 1071 (citing Celotex, 477 U.S. at 325). "Unsubstantiated assertions" or "mere allegations or denials" will not adequately cast doubt on material facts at issue. See Hopper v. Frank, 16 F.3d 92 (5th Cir. 1994). See also Fed. R. Civ. P. 56(e). Likewise, the nonmovant must present more than a mere "scintilla" of evidence. See Davis v. Chevron U.S.A., Inc., 14 F.3d 1082 (5th Cir. 1994). The evidence must be viewed in the light most favorable to the nonmovant. See Whelan v. Winchester Prod. Co., 319 F.3d 225, 228 (5th Cir. 2003); Walker v. Thompson, 214 F.3d 615, 624 (5th Cir. 2000). Summary Judgment should be granted "when the nonmoving party fails to meet its burden to come forward with facts and law demonstrating a basis for recovery that would support a jury verdict." Little, 37 F.3d at 1071.

### IV. Eleventh Amendment Immunity for Defendants Sued In Their Official Capacities

Defendants argue that to the extent Plaintiff is suing Defendants in their official capacities for damages, Defendants are entitled to Eleventh Amendment immunity. Defendants contend that all Defendants are employees of HCCSCD. Defendants are correct in citing Clark v. Tarrant County as the appropriate legal framework under which to analyze the Eleventh Amendment immunity issue in this case. See 798 F.2d 736 (5th Cir. 1986). See also Williams v. Dallas Area Rapid Transit, 242 F.3d 315, 316 (5th Cir.

2001) ("When confronted with a governmental entity asserting Eleventh Amendment immunity as an arm of the state, [courts] apply the test established in Clark . . . ").

"CSCDs in Texas [were] formerly called Probation Departments." Hardin County Community Supervision and Corrections Dep't v. Sullivan, 106 S.W.3d 186, 187 (5th Cir. 2003). Although in some instances employees of CSCDs are not considered employees of the state, they are employees of the state when the employee "causes damages resulting from negligence or a deprivation of federal or state constitutional rights or privileges." Clark, 798 F.2d at 744. See also Tex. Gov't Code Ann. §§ 76.006(c); Civ. Prac. & Rem. Code Ann. §§ 104.001-.008 (West 1997 & 2004 Supp.); Sullivan, 106 S.W.3d at 187 (tracing the recodification of the provisions governing CSCDs). The Fifth Circuit in Clark has previously assessed the relevant factors, and determined that Adult Probation, the precursor in name to the CSCDs, is an arm of the state for the purpose of Eleventh Amendment immunity. This Court does not find any relevant distinguishing factors that would necessitate a different conclusion on the immunity issue in this case. Furthermore, when suit is brought against a person in an official capacity, as in this case, the plaintiff is really attempting to impose liability against the governmental unit represented by the official. See Kentucky v. Graham, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). A suit against employees in their official capacity is really "another way of asserting a suit against the state, [and] if no suit against the state may lie due to sovereign immunity, no suit may lie against a person sued only in his official capacity." Nueces County v. Ferguson, 97 S.W.3d 205, 215 & n.11 (Tex. App. –Corpus Christi-Edinburg, 2003, pet. filed) (citations omitted). The Court, therefore, finds that to the extent Plaintiffs bring their claims against Defendants in their official capacities, this Court lacks subject matter jurisdiction over Plaintiff's section 1983 claims due to the state's sovereign immunity. See Clark, 798 F.2d at 745.

### V. Exhaustion of Administrative Remedies Under the Prison Litigation Reform Act ("PLRA")

Defendants first argue they may raise Plaintiff's failure to comply with the PLRA's

exhaustion requirement as an affirmative defense.  See 42 U.S.C. § 1997e(a) (2003). Section 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Quite simply, the administrative exhaustion requirement only applies to those prisoners who are confined at the time they *file* their lawsuit asserting grievances concerning prison conditions.  Plaintiff *filed* the present lawsuit on October 7, 2002.  He was released from the Boot Camp program in July 2001.  Plaintiff, therefore, filed this lawsuit after his release from the program.  Under such circumstances, he is not a prisoner as defined by the PLRA, and he is not required to exhaust administrative remedies before filing suit in a federal district court.  See, e.g., Harris v. Garner, 216 F.3d 970, 975 (11th Cir. 2000).  Defendant's motion fails on this point.

### VI. Plaintiff's Eight Amendment Claim: Defendant's Deliberate Indifference to Plaintiff's Serious Health and Safety Needs

#### A. Legal Framework for Claims Under § 1983

"To state a claim under § 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution of laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." Moore v. Willis Indep. Sch. Dist., 233 F.3d 871, 874 (5th Cir. 2000).  Qualified immunity

> shields a state official from personal liability for damages under 42 U.S.C. § 1983 when the official's exercise of discretionary authority results in a violation of an individual's federal constitutional or statutory rights, unless at the time and under the circumstances of the challenged conduct all reasonable officials would have realized that it was proscribed by the federal law on which the suit was founded.

Palmer v. Johnson, 193 F.3d 346, 351 (5th Cir. 1999) (citations omitted).  Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." See Austin v. Johnson, 328 F.3d 204, 207 (5th Cir. 2003) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)).  The defense of qualified immunity protects "'all but the plainly incompetent or those who knowingly violate the

law.'" Austin, 193 F.3d at 207 (quoting Wooley v. City of Baton Rouge, 211 F.3d 913, 918-19 (5th Cir. 2000)). The initial question is whether "taken in the light most favorable to the party asserting the injury, [ ] the facts alleged show the officer's conduct violated a constitutional right." Saucier v. Katz, 533 U.S. 194, 201, 121 S.CT. 2151, 150 L.Ed.2d 272 (2001). The test for qualified immunity necessitates a two-part or "bifurcated" test of (1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and if so (2) whether the defendant's conduct was objectively unreasonable in the light of the clearly established law at the time of the incident. See Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 755 (5th Cir. 2001).

### B. Legal Framework and Analysis of Deliberate Indifference to Serious Medical Needs

The Eighth Amendment's prohibition against cruel and unusual punishment in prison condition cases mandates that prison officials provide "humane conditions of confinement," and "inmates receive adequate food, clothing, shelter, and medical care. . ." Farmer v. Brennan, 511 U.S. 825, 832, 114 S.CT. 1970, 1976, 128 L.Ed.2d 811 (1994). See also Rhodes v. Chapman, 452 U.S. 337, 347, 349, 101 S.CT. 2392, 2399, 2400, 69 L.Ed.2d 59 (1981) (holding the constitution "does not mandate comfortable prisons," but the conditions "must not involve the wanton and unnecessary infliction of pain.").

Plaintiff alleges the named Defendants were deliberately indifferent to his serious medical needs. In order to establish a violation of the Eighth Amendment's right to adequate medical care, Plaintiff must show the defendants' "deliberate indifferen[ce] to [Plaintiff's] *serious* medical needs." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997) (citing Estelle v. Gamble, 429 U.S. 97, 100, 97 S.CT. 285, 50 L.Ed.2d 251 (1976)). A serious medical need has been defined as one that is "either obvious to the layperson or supported by medical evidence." Aswegan v. Henry, 49 F.3d 461, 464 (8th Cir. 1995). See also Gaudreault v. Municipality of Salem, Mass, 923 F.2d 203, 208 (1st Cir. 1990). As many courts have acknowledged, "deliberate indifference is an extremely high standard to meet," and requires that the defendants "both knew of and

disregarded an excessive risk" to Plaintiff's health or safety. Domino, 239 F.3d at 754, 755. See also Farmer, 511 U.S. at 837, 114 S.CT. at 1979, 128 L.Ed.2d 811. Deliberate indifference requires a form of "subjective recklessness" and prison officials cannot be found liable under the Eighth Amendment unless they are aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and they actually draw the inference. Farmer, 511 U.S. at 837. See also Bradley v. Puckett, 157 F.3d 1022, 1025 (5th Cir. 1998). Stated differently, "a prison official must have a 'sufficiently culpable state of mind.'" Id. at 834.

Negligent medical treatment, malpractice, or an incorrect diagnosis will not suffice to meet the exacting standard of deliberate indifference. See, e.g., Graves v. Hampton, 1 F.3d 315, 319 (5th Cir. 1993). See also Domino, 239 F.3d at 754; Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) ("'[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not.'"). "Rather, the plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" Domino, 239 F.3d at 754 (quotations omitted). Therefore, a decision to abstain from giving further treatment is an example of medical judgment. See id. (quoting Estelle, 429 U.S. at 107). The "'failure to alleviate a significant risk that [the official] should have perceived, but did not' is insufficient to show deliberate indifference." Id. (quoting Farmer, 511 U.S. at 838). Furthermore, a "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993).

Plaintiff has failed to show that prison officials realized he was in imminent danger and consciously and knowingly refused to do anything about it. See Campbell v. Greer, 831 F.2d 700, 702 (7th Cir. 1987). Although the conditions of confinement must not impose a wanton and unnecessary infliction of pain, the Fifth Circuit has recently determined that military style boot camp conditions are not per se violations of the Eighth Amendment. See Austin v. Johnson, 328 F.3d 204, 209-10 (5th Cir. 2003).

8

Plaintiff's evidence, therefore, must demonstrate Defendants acted with deliberate indifference to his *serious* medical needs under the circumstances. Even assuming Plaintiff's knee infection was indeed a serious medical condition, Plaintiff has failed to show Defendants' acted with deliberate indifference.

The evidence presented, and the facts laid out in Plaintiff's affidavit demonstrate prison officials actually followed the course of treatment ordered by the physician on June 27, 2001 - that is, providing the defendant Ibuprofen. Furthermore, after examining the Plaintiff on June 27, the physician did not restrict Plaintiff's physical activity or suggest that his participation in the normal exercises required of cadets in the Boot Camp be adjusted or otherwise proscribed.

Plaintiff states in his affidavit that on June 27, 2001, when he first reported to sick call, his "right knee was extremely swollen, itching and inflamed, and [he] could hardly bend it. [His] knee was as big as a football." Pl's Response, Ex. A. Plaintiff acknowledges that the doctor or nurse "released [him] to full duty." Id. This fact is the first step in negating any deliberate indifference on the Defendants' part in forcing Plaintiff to continue with the regular routine at the Boot Camp like other cadets. Plaintiff states his swollen knee would be "obvious to everyone," and it was clear he "was in pain" and having difficulty continuing with his training. The condition of his knee, however, was already obvious to observers on June 27 when he was allowed to report to sick call, examined, and released without exercise restrictions. Id. Thus, Defendants complied with the physician's orders and prescribed treatment.

Plaintiff states he complained about the pain in his knee every day and requested help, but to no avail. Id. Plaintiff does not, however, state that he requested to see a physician or return to sick call during the five days between his first visit to sick call on June 27 and his second visit on July 2, 2001. See id. Rather, he acknowledges that the Defendants gave him medication, but such medicine did not alleviate his pain. See id. Plaintiff only states that he "was able to get on sick call again on July 2, 2001. The doctor finally had [him] transported to the hospital." Id. In short, nothing in Plaintiff's affidavit indicates Defendants treated him with deliberate indifference. And, other than Plaintiff's statement that he was forced to endure strenuous exercise and

long hours of military-like training, there is no evidence that his treatment was unlike the treatment visited upon the other cadets as a normal part of the Boot Camp program.

Plaintiff further attempts to demonstrate Defendant's deliberate indifference by focusing on the fact that he told the doctor on June 27 that he had been bitten by a spider and there had previously been many occurrences of spider bites at the Boot Camp. Plaintiff notes that "defendants made [him] sleep with the lights on because, [he] w[as] told by [the] sergeant, the lights would prevent the spiders from coming into [the] dorms." Pl's Response, Ex. A. Defendants, however, presented undisputed evidence that the Boot Camp was anything but generally indifferent to the ongoing concerns that spiders had infested the residential dorms. For example, Defendants cite a memorandum sent from the Director of the Boot Camp to the Executive Director of Hidalgo County CSCD, which chronologically cataloged the efforts undertaken to treat cadets with spider bits and fumigate the dorms. See Defs' Motion, at p. 4 & Ex. D-5. Plaintiff does not contest the admissibility of this memo, nor does he dispute that the Boot Camp fumigated for spiders and made other attempts to rectify the problems. In fact, Plaintiff states Defendants "deliberately chose to expose the cadets to unnecessary risk while Defendants experimented with ways to eradicate the serious problem of spider bites and infection," including "fumigations and 'countermeasures.'" Pl's Response, at pp 4 & 7. Plaintiff asserts "[t]he only reasonable solution was to move out until the problem was resolved." Id. at 7.

Plaintiff's affidavit, legal arguments, and assertions demonstrate that Defendants were not deliberately indifferent to his plight. Plaintiff is correct that the Defendants were certainly aware of the possible spider infestation, but the record is undisputed that Defendants did not sit idly by after cadets made similar reports of spider bites. Plaintiff's own opinion as to what reasonable measures should be taken to eradicate insect infestation, or his opinions concerning the best course of treatment are irrelevant in the context of an Eighth Amendment claim because they do not demonstrate that Defendants possessed a culpable state of mind, necessary to support the conclusion that an Eighth Amendment violation occurred. A failure to control a spider problem, without evidence that Defendants' failure was the result of deliberate indifference, does

not rise to the level of a constitutional violation. This conclusion does not change even if the doctors and staff at the facility were medically negligent in their diagnosis and initial treatment of Plaintiff's knee and even if they should have responded by sending Plaintiff to the hospital sooner. In the end, taking the evidence in the light most favorable to the Plaintiff, he has not shown that prison officials acted with deliberate indifference to his medical needs. Having failed to establish a genuine issue of material fact regarding his Eighth Amendment claim or a violation of a clearly established constitutional right, there is no need for the court to reach the second prong of a qualified immunity defense, the objective reasonableness of Defendants' conduct. The Defendants are entitled to qualified immunity on Plaintiff's Eighth Amendment claim.

### VII. Conclusion

For the reasons discussed above, the Court **GRANTS** Defendants' Motion for Summary Judgment on Plaintiff's Eighth Amendment claim [Dkt. No. 15]. As there are claims remaining in this lawsuit, the parties are **ORDERED** to submit an amended proposed scheduling order no later than Friday, March 19, 2004, at 4:00 p.m.

DONE at Brownsville, Texas, this 11th day of March, 2004.

Hilda G. Tagle
United States District Judge